# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN WARE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. BITTER, et al.,<br><br>　　　　　Defendants. | Case No. 1:16-cv-01302-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 26)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Martin Ware is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed a complaint in this action which was dismissed with leave to amend on January 11, 2017. (ECF No. 19.) On March 22, 2017, Plaintiff's first amended complaint was dismissed for failure to state a claim. (ECF No. 24.) Plaintiff was granted one final opportunity to file an amended complaint. Currently before the Court is Plaintiff's second amended complaint, filed May 11, 2017. (ECF No. 26.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1

1  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## ALLEGATIONS IN AMENDED COMPLAINT

The incidents in the second amended complaint occurred after Plaintiff was transferred to Kern Valley State Prison. While somewhat unclear, Plaintiff's second amended complaint appears to allege deliberate indifference to his safety based his requests to have inmates placed on his enemies list and a request to have him placed on temporary single cell status or restricted status because he cannot be housed with African-Americans, Mexicans, Hispanics, or white

1 supremists. (Sec. Am. Compl. ("SAC") 5, 18,[1] ECF No. 26.)

On February 6, 2015, Plaintiff appeared for an open-line interview with Defendant J. Usher. (SAC at 23.) Plaintiff informed Defendant Usher that he had received a memorandum from G. Jaime. (SAC at 23.) Plaintiff said he was given specific instructions to follow up on his potential race based issues and ongoing enemy concerns with his assigned counselor before his upcoming annual unit classification committee review. (SAC at 23.) Defendant Usher asked Plaintiff if this was about inmate Stanley and Plaintiff told him that it was. (SAC at 23.) On January 31, 2015, Plaintiff had seen inmate Stanley on the Facility C upper yard during p.m. recreation. (SAC at 23.) Plaintiff complained that Correctional Sergeant V. Sica had completed a safety concerns assessment with Plaintiff, but his concerns had been reduced to an incompatibility issue. (SAC at 23.) Plaintiff stated that he wanted to sign off on a compatible chrono with inmate Stanley so he could remain housed safely on the Facility C upper yard and provided Defendant Usher with a copy of a compatible chrono from High Dessert State Prison. (SAC at 23.) Defendant Usher asked Plaintiff if he had security concerns and when Plaintiff stated that he did, he was placed in restraints and escorted to the program office for administrative review. (SAC at 23-24.)

Plaintiff was transferred to the sensitive needs yard around February 6, 2015, due to enemy concerns with inmate Stanley. (SAC at 8.) Plaintiff was initially housed in D-6 cell 224, but Correctional Officer Wise arranged for Plaintiff to be transferred to another housing unit, D-1 cell 122U due to the probability that an altercation would occur if Plaintiff was housed with a member of the 25er prison gang. (SAC at 8, 10.)

On February 26, 2015, Plaintiff asked Defendant Kaufman if he could retrieve his legal documents from another counselor. (SAC at 10.) Plaintiff needed a counselor to review a letter received from Associate Warden Jaime, dated January 2, 2015, and asked Defendant Kaufman to follow up on all of Plaintiff's potential racial issues and on-going enemy concerns regarding sensitive needs yard African American inmates before an upcoming annual classification

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

committee review scheduled for May 21, 2015. (SAC at 10.) Defendant Kaufman asked Plaintiff when he had got to the yard. (SAC at 10.) Plaintiff responded that he was rehoused from C-5 cell 114U to D-6 cell 229U and later moved to D-1 cell 122U. (SAC at 10.) Defendant Kaufman stated that Plaintiff had been moved due to safety concerns. (SAC at 10.) Plaintiff asked to place inmate Stanley on his CDCR 812-A and asked Defendant Kaufman to call counselor Castillo to receive several documents that he needed for an upcoming unit classification committee review. (SAC at 10.) Defendant Kaufman responded that she was not able to make the call and that Plaintiff needed to submit a CDCR 22 inmate request for interview. (SAC at 10-11.)

On August 14, 2015, Plaintiff spoke with Defendant Maria Faulkner in a private close office interview and Correctional Officer A Robles from Investigative Services was present. (SAC at 11.) Plaintiff contends that Defendant Faulkner was responding to an earlier request from Warden Bitter regarding 41 individual legal documents that were sent to Chief Deputy Warden Davey were in the possession of Facility C program administrators. (SAC at 11.) Defendant Faulkner told Plaintiff that she had not called him to her office to discuss that issue, and refused to discuss the issues Plaintiff wanted addressed. (SAC at 11.) Defendant Faulkner told Plaintiff that there was a problem with his report that he had been attacked by inmate Martinez while housed at Corcoran in 1996. (SAC at 11.) Defendant Faulkner informed Plaintiff that inmate Martinez could not be located or listed in Plaintiff's central file and that Plaintiff had not provided any real detailed information to identity the inmate. (SAC at 11.)

Plaintiff asked if he could summarize a victim statement in the presence of Officer Robles that Officer Burtton witnessed an attack and Plaintiff was slashed on the left side of the neck. (SAC at 11.) Officer Childs gathered evidence and asked Plaintiff to testify against inmate Martinez, but Plaintiff had declined because inmate Martinez was a known prison gang associate of the Mexican Mafia. (SAC at 12.) Plaintiff explained that inmate Martinez was an active southern from a Hispanic street gang from "San Diego National SUR Southern United Race 13 trecez" and that Martinez had been convicted of an execution style murder and was known by the aka "Sleepy. (SAC at 12.) Inmate Martinez had been assigned to Plaintiff's cell in

security housing unit at Corcoran. (SAC at 12.) Plaintiff stated he had been stabbed by inmate Martinez on September 4, 1996. (SAC at 12.)

Defendant Faulkner asked why inmate Martinez had stabbed Plaintiff. (SAC at 12.) Plaintiff responded that he had been identified as having been in protective custody while incarcerated at the West Valley Detention Center County Jail in Rancho Cucamonga, San Bernardino. (SAC at 12.) Defendant Faulkner asked Plaintiff if he was sure of the date because she was unable to find inmate Martinez in the system and asked if Plaintiff knew inmate Martinez' prison number. (SAC at 12.) Plaintiff responded that he did not remember inmate Martinez' prison number but there was a medical report of his injury in his medical file. (SAC at 12.) Defendant Faulkner told Plaintiff that his medical files were private and did not conduct a further inquiry stating that she could not review his medical records. (SAC at 12.) Plaintiff continued to insist that the warden at Corcoran had authorized a CDC 128-G classification chrono. (SAC at 12.)

In 1996, Plaintiff was a victim of several incidents with Mexican Mafia gang members. (SAC at 13.) Corcoran did not take adequate measures to address Plaintiff's security concerns. (SAC at 13.) Plaintiff informed Defendant Faulkner that while the warden at Corcoran authorized an investigation, Plaintiff was transferred to another institution. (SAC at 13.) Defendant Faulkner told Plaintiff that there were so many inmates with the last name Martinez and the information Plaintiff was providing was not sufficient to identity the assailant in 1996. (SAC at 13.)

Plaintiff explained to Defendant Faulkner that he was involved with two separate race based incidents with African American inmates in the sensitive needs unit between May 14, 2011 and January 24, 2014. (SAC at 14.) Plaintiff stated that he needed to be temporarily on single cell status ("R.T.") with the one alternative that he be assigned to restricted partially to another race other than African American ("R.P."). (SAC at 15.) Defendant Faulkner told Plaintiff that he was "five documented listed in-cell assaults which warrant" that he does not be reassigned R.T. or R.P. (SAC at 15.) Plaintiff responded that he has been the victim of at least three attacks by Hispanic disruptive groups when he was housed at Corcoran. (SAC at 15.)

5

Plaintiff was housed in the sensitive needs yard because he witnesses a murder carried out by P.H.U. inmates and testified at a trial back in 1991. (SAC at 16, 18.) Plaintiff has been housed in the sensitive needs unit for over twenty years. (SAC at 17.) Defendant Faulkner asked Plaintiff why he had been reassigned from C Facility. (SAC at 17.) Plaintiff told Defendant Faulkner that he was reassigned because correctional officers determined it was not safe to house him with a 25 two fiver. (SAC at 17.) A Mexican inmate refused to cell with Plaintiff so Plaintiff was rehoused to live with a white cellmate. (SAC at 17.) Defendant Faulkner refused to give Plaintiff an integrated housing code based on his past victimization. (SAC at 18.) Plaintiff informed Defendant Faulkner that he was going to file an appeal because he wanted single cell status. (SAC at 19.) Plaintiff also told Defendant Faulkner that he could live with a Hispanic from southern California. (SAC at 19.) Plaintiff refused to live with a homosexual. (SAC at 19.) Defendant Faulkner told Plaintiff that she would talk to Correctional Counselor Contreras regarding what I.H.C. should be recommended because Plaintiff is race eligible ("R.E.") which means that he can live with any race. (SAC at 19.) Plaintiff stated he wanted temporary single cell status until he could find a compatible cellmate. (SAC at 19.)

On August 15, 2015, Plaintiff appeared before a second annual unit classification committee orientation new arrival review. (SAC at 20.) Plaintiff gave Defendant Faulkner a note requesting that the hearing be recorded. (SAC at 20.) Defendant Faulkner told Plaintiff that they had identified inmate Martinez from Corcoran and he is noted in Plaintiff's file. (SAC at 20.) Defendant Faulkner told Plaintiff that he had evaluated Plaintiff's safety concerns and all his enemies are documented and noted in his 812 file. (SAC at 21.) Defendant Faulkner informed Plaintiff that he did not meet the criteria for restricted temporarily which means that he can live with any race. (SAC at 21.) Plaintiff told the committee that there is a likelihood that he would be exposed to more serious danger or harm if he was housed with a black inmate on Facility D. (SAC at 21.) Defendant Faulkner told Plaintiff that he was assuming something before it happens and he needs to find someone that he is compatible to live with before his current cell partner is endorsed. (SAC at 21.)

On August 18, 2015, Plaintiff had a private interview with Defendant Contreras. (SAC at

22.) Defendant Contreras told Plaintiff that he needed to sign a CDCR 2260 advisement of expectations and a 128-B security threat group five renunciation of a security threat group affiliation and illicit behavior. (SAC at 22.) Plaintiff explained that he was not a gang associate from Vanness Gangster 34th Street Bloods. (SAC at 22.) Defendant Contreras responded that the forms were to advise Plaintiff of the sensitive needs yard expectations and that he has been identified as a possible drop out from a blackstreet gang. (SAC at 22.) Plaintiff informed Defendant Contreras that the forms were wrong and he would appeal the classification decision to correct his central file records. (SAC at 22.) Defendant Contreras told Plaintiff that he could appeal if he wanted. (SAC at 22.)

Plaintiff alleges that Defendants Kaufman, Faulkner, Contreras, Usher, Garcia, and Perez violated his rights under the Eighth and Fourteenth Amendments. (SAC at 25-33.) Plaintiff seeks monetary damages, statewide injunctive relief, and declaratory relief. (SAC at 34.)

For the reasons discussed below, Plaintiff's complaint fails to state a cognizable claim for relief against any named defendant in this action.

## III.

## DISCUSSION

Initially, the Court notes that the March 22, 2017 order dismissing Plaintiff's complaint with leave to amend provided that Plaintiff could not file a complaint more than twenty five pages in length. (ECF No. 24 at 8:26-27.) The complaint filed in this action is thirty five pages long and clearly violates the March 22, 2017 order. While the Court has screened Plaintiff's second amended complaint, Plaintiff is advised that the failure to comply with a court order may be grounds for sanctions including dismissal of an action. The Court shall not look favorably on any further failure to comply with this Court's orders in other cases pending before the undersigned.

### A. Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide

7

prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

As Plaintiff was advised in the March 22, 2017, an assertion that Plaintiff may have been in fear of attack based upon race and/or gang affiliation does not subject Defendants to liability for failure to protect under the Eighth Amendment. Plaintiff has not identified any threat to his safety, and Plaintiff's allegations amount to nothing more than a generalized fear of harm which fails to state a cognizable claim for relief. See, e.g., Funk v. Schriro, No. CV 08-0739-PHX-GMS (JCG), 2009 WL 4898262, at *7 (D. Ariz. Dec. 14, 2009) (plaintiff's claim that he was forced to endure "constant threat of violence" "too general and conclusory" to make objective showing of substantial risk of harm); Hoptowit v. Ray, 682 F.2d 1237, 1256 (9th Cir. 1982) ("[M]isclassification does not itself inflict pain within the meaning of the Eighth Amendment."), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Indeed, the Ninth Circuit has held that even housing inmates of opposite gangs in the same cell, does not alone, state a claim under the Eighth Amendment. See Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1161 (9th Cir. 2013) (although Plaintiff held subjective fear for his safety, there was no specific information from which Defendants could draw an inference that plaintiff was exposed to a specific threat).

Plaintiff has failed to allege facts by which the Court can infer that any named defendant was aware that Plaintiff was at a risk of harm and failed to adequately respond. Rather, the

8

1  complaint demonstrates that when Plaintiff raised concerns regarding his enemies, attempts were
2  made to identify the inmates involved and verify that Plaintiff's safety concerns were recorded
3  on his enemy list.  Further, when Plaintiff raised issues regarding safety concerns on the yard,
4  Plaintiff was moved to another housing Facility.  Accordingly, the Court finds that Plaintiff has
5  failed to state a cognizable failure to protect claim.

6  **B.     Fourteenth Amendment**

7  Plaintiff alleges that he was denied procedural safeguards by prison officials and was
8  denied due process.  The Fourteenth Amendment's Due Process Clause protects persons against
9  deprivations of life, liberty, or property; and those who seek to invoke its procedural protection
10 must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221
11 (2005).  To state a claim, Plaintiff must first identify the interest at stake.  Wilkinson, 545 U.S. at
12 221.  Liberty interests may arise from the Due Process Clause itself or from an expectation or
13 interest created by prison regulations.  Id.

14 The Due Process Clause does not confer on inmates a liberty interest in avoiding more
15 adverse conditions of confinement, and the existence of a liberty interest created by prison
16 regulations is determined by focusing on the nature of the condition of confinement at issue.
17 Wilkinson, 545 U.S. at 221-23 (citing Sandin, 515 U.S. at 481-84) (quotation marks omitted).
18 Such liberty interests are generally limited to freedom from restraint which imposes atypical and
19 significant hardship on the inmate in relation to the ordinary incidents of prison life.  Wilkinson,
20 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune,
21 476 F.3d 716, 718 (9th Cir. 2007).  Following the Supreme Court's decision in Sandin, "it is
22 clear that there are only two instances in which a prisoner may claim a protected liberty interest:
23 (1) when the prison's actions have the effect of altering the term of imprisonment (i.e. revocation
24 of good time credits), which is protected by the Due Process Clause by its own force, and (2)
25 when a state prison regulation proscribes a prison official's conduct and the conduct imposes an
26 "atypical and significant hardship" on the inmate.  Sandefur v. Lewis, 937 F.Supp. 890, 895 (D.
27 Ariz. 1996).

28 The basis of Plaintiff's complaint is that he was denied his request to be placed on

9

temporary single cell status or restricted status because he cannot be housed with African-Americans, Mexicans, Hispanics, or white supremists. However, Plaintiff has failed to allege facts to demonstrate that he has a protected liberty interest in single cell status or in not being housed with a member of another race. "[A] prisoner has no constitutional right to a particular classification status." Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also, Walker v. Cate, No. 2:11-CV-2728 GGH P, 2012 WL 2377185, at *4 (E.D. Cal. June 22, 2012), report and recommendation adopted, No. CVS112728KJMGGHP, 2012 WL 12842784 (E.D. Cal. Sept. 28, 2012), aff'd sub nom. Walker v. Beard, 789 F.3d 1125 (9th Cir. 2015) ("in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments").

Plaintiff cites various sections of Title 15 for which he alleges he was denied procedural safeguards. Specifically, Plaintiff cites sections 3084.1 (Right to Appeal), 3086 (Inmate/Parolee Request for Interview, Item or Service), 3391 (Employee Conduct); 3378 (Security Threat Group Identification, Prevention, and Management), 3378.1 (Security Threat Group Certification Process), 3378.2 (Security Threat Group Validation Process); 3270 (General Policy), and 3271 (Responsibilities of Employees). The only section that appears reasonably relevant to whether a liberty interest is created by the state would be section 3269.1 (Integrated Housing).

Section 3269.1 provides that an inmate's race will not be used as a primary factor in determining the housing of an inmate in the population. Housing assignments are "made on the basis of available documentation and individual case factors to implement an Integrated Housing Policy (IHP). Individual case factors include, but are not limited to, such factors as: (1) History of racial violence. (2) Commitment offense/time to serve. (3) Classification score. (4) Custody level. (5) Education." Cal. Code Regs. tit. 15, § 3269.1. Section 3269.1 further defines the categories in which Plaintiff seeks to be included in this action.

> (2) RP, Restricted Partially. An inmate that may be considered ineligible to live with inmates of a particular race. Ineligibility to live with someone of another race could be based on a racially motivated incident, where racial beliefs or attitudes were the cause of the incident.
> . . . .

10

> (4) RT, Restricted Temporarily by Custody. Inmates with insufficient information or documentation for the designated custody supervisor to make an objective determination shall be coded RT for Restricted Temporarily Restricted by Custody. This code may be used when conflicting information arrives with the inmate or when questionable statements or behavior by the inmate are observed that are not consistent with the inmate's claim of eligibility.

Id.

None of the regulations cited by Plaintiff proscribes a prison official's conduct and further, sharing a cell with a member of another race fails to demonstrate an atypical and significant hardship in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221. Plaintiff has failed to allege a liberty interest that would be protected under the Due Process Clause of the Fourteenth Amendment. Absent a protected liberty interest, Plaintiff has failed to state a claim that he was subjected to a violation of the Fourteenth Amendment.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted. Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's second amended complaint fails to state a claim for relief. Based upon the allegations in Plaintiff's original and amended complaints, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support a violation of the Eighth or Fourteenth Amendment, and further amendment would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may not deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a cognizable claim for relief; and

2. The Clerk of Court be directed to terminate this action.

These findings and recommendations will be submitted to the United States District

1 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty**
2 | **(30) days** after being served with these findings and recommendations, Plaintiff may file written
3 | objections with the Court.  The document should be captioned "Objections to Magistrate Judge's
4 | Findings and Recommendations."  Plaintiff is advised that failure to file objections within the
5 | specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834,
6 | 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 17, 2017**

_____
UNITED STATES MAGISTRATE JUDGE